**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                            :
                                                            :       Chapter 13
In re:                                                      :
                                                            :       Case No. 13-35122 (cgm)
        Alan Laycock,                                       :
                                                            :
                                        Debtor.             :
                                                            :
-------------------------------------------------------------X

**A P P E A R A N C E S :**

Andrea B. Malin
Genova & Malin, Attorneys at Law
The Hampton Center
1136 Route 9
Wappinger Falls, NY 12590
*Attorney for the Debtor*

Thomas Patalano
Dorf & Nelson LLP
International Corporate Center
555 Theodore Fremd Avenue
Rye, NY 10580
*Attorney for Ocwen Loan Servicing, LLC, as servicer for HSBC Bank USA,N.A., as Trustee for Fremont Home Loan Trust 2006-D, Mortgage-Backed Certificates, Series 2006—D.*

**MEMORANDUM DECISION DENYING DEBTOR'S MOTION
TO BIFURCATE OCWEN'S FIRST MORTGAGE LIEN**

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

**Introduction**

Before the Court is a motion to bifurcate a first mortgage lien on real property that the

debtor argues is not his principal residence.  The mortgage holder counters by arguing that the

real property is the debtor's principal residence.  The Court agrees with the mortgage holder.

Most persuasive is the fact that the debtor opted to participate in this Court's loss mitigation

program which ultimately resulted in a HAMP loan modification.

## Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a)

and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated

January 31, 2012.  This is a "core proceeding" pursuant to 28 U.S.C. § 157 (b)(2)(B) (allowance of

claims against the estate) and (b)(2)(K) (determining the validity, extent, or priority of liens).

## Background

Alan Laycock ("Debtor") filed a chapter 13 petition on January 22, 2013.  The Debtor's

petition indicates that he holds a fee simple interest in "Residence/Commercial" real property

located at 203 Route 28A, Hurley, NY 12443 ("Route 28A Property"). Sched. A, ECF Doc. No.

1.  The Route 28A Property is encumbered by a first mortgage lien held by Ocwen Loan

Servicing, LLC, Servicer for HSBC Bank USA National Association, as Trustee or Fremont

Home Loan Trust 2006-D, Mortgage-Backed Certificates, Series 2006-D ("Ocwen").  As of the

petition date, the Debtor was in arrears on his mortgage payments to Ocwen. Sched. D, ECF

Doc. No. 1.  With a hope of recapitalizing these arrears through a loan modification, the Debtor

elected to participate in this Court's Loss Mitigation Program by checking the appropriate box in

Section C of the model chapter 13 plan, filed on January 22, 2013. Sec. C, ECF Doc. No. 5.  As

noted in Section C of the plan, loss mitigation "applies only to the Debtor's residential real

property or cooperative apartment." *Id*.

Pursuant to an Order dated February 15, 2013, the Debtor and Ocwen entered into loss

mitigation. ECF Doc. No. 9.  Over the next few months, the Debtor provided Ocwen with the

requisite documents and both parties apprised this Court of their progress through status reports

filed on the docket and at loss mitigation hearings.  Loss mitigation ultimately culminated in a

HAMP trial loan modification. Stat. Let., ECF Doc. No. 33.

While the parties were engaged in loss mitigation, the Debtor filed a motion to bifurcate

Ocwen's mortgage lien into secured and unsecured portions, value the unsecured portion at zero,

and then void the unsecured portion. ECF Doc. Nos. 30 and 31.  The Debtor also requested that

the Court value the Route 28A Property at $90,000 pursuant to an appraisal annexed to the

motion and avoid a wholly unsecured second mortgage encumbering the Route 28A Property.

The Debtor's second mortgage is held by KeyBank NA.

Ocwen opposed the Debtor's motion, arguing that its first mortgage lien cannot be

bifurcated as a matter of law as the Route 28A Property is the Debtor's principal residence and

falls within the anti-modification exception to 11 U.S.C. § 1322(b)(2). ECF Doc. No.40.  Ocwen

also attached a Brokers Price Opinion dated April 10, 2013, which indicates that the Route 28A

Property has an anticipated sale price of $140,000, much higher than the Debtor's proffered

appraisal.  KeyBank did not file opposition to the Debtor's motion.

Both the Debtor and Ocwen appeared before this Court on August 27, 2013 for a hearing

on the motion.  KeyBank did not appear.  At the conclusion of the hearing, the Court issued a

bench ruling granting the Debtor's motion to avoid KeyBank's second mortgage lien and

denying the Debtor's motion to bifurcate Ocwen's first mortgage lien.  This opinion follows to

provide the parties with the Court's legal justifications for its ruling.

### Discussion

Two provisions of the Bankruptcy Code are operative with respect to the bifurcation of

Ocwen's first mortgage lien.

Section 506(d) states:

> To the extent that a lien secures a claim again the debtor that is not an allowed secured claim, such lien is void, unless—(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

Section 1322(b)(2) states:

> Subject to subsections (a) and (c) of this section, the plan may—(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. §§ 506(d) and 1322(b)(2). The United States Supreme Court has interpreted these provisions in cases factually similar to the case at bar.  In *Dewsnup v. Timm*, the Supreme Court held that a chapter 7 debtor could not strip down a partially secured claim with § 506(d) as the claim was secured by a lien and the claim had been fully allowed pursuant to § 502. 502 U.S. 410, 417 (1992).  One year after *Dewsnup*, the Supreme Court in *Nobelman v. American Savings Bank* held that a chapter 13 debtor could not strip down a partially secured mortgage lien on the debtor's principal residence pursuant to § 1322(b)(2). 508 U.S. 324, 331-32 (1993).  Read together, these cases produce one rule: a debtor cannot strip down a mortgage lien on the debtor's principal residence (with either § 506(d) or § 1322(b)(2)) if the mortgage lien is secured by some value in the property.

The first mortgage lien held by Ocwen is secured by some value, regardless of whether the Court accepts the Debtor's or Ocwen's appraisal.  The issue then is whether the Route 28A Property is the "debtor's principal residence."

### A.    Is the Route 28A Property the Debtor's Principal Residence?

Debtor argues that the Route 28A Property should not be considered his principal residence as "the majority of the courts that have considered the issue have ruled that an otherwise commercial or income producing property will not be given the protection of the anti-

modification provision of Section 1322(b)(2) simply because the debtor may reside therein." Mem. Law in Supp. of Mtn., ECF Doc. No. 31, pg. 4.  In support, the Debtor states that the Route 28A Property is "zoned light factory/highway commercial[,]" and the Debtor always intended to utilize the premises for commercial purposes. *Id*. at pg. 6.   The Debtor currently operates a full service wood-working factory on the Route 28A Property. *Id*.  Given that the property is predominantly commercial in nature, the Debtor argues that it "is not well suited for a single family residence and is occupied by the debtor due to his financial situation." *Id*.

Ocwen argues that the Route 28A Property should be considered the Debtor's principal residence as "the subject premises is a one family, three-bedroom, ranch style home with an attached garage" that the Debtor has owned since 1994.  Aff. in Opp., ECF No. 40, ¶ 8, 10. Ocwen also points out that the Debtor's own appraisal concedes that the Route 28A Property is zoned residential, and that HAMP is only available to residential borrowers. *Id*. at ¶ 15, 28.  As the Route 28 Property is the Debtor's principal residence, Ocwen argues that its "lien cannot be bifurcated as it is the primary lien against the Debtor's principal residence and therefore Ocwen's rights in the *entire* lien are protected under the anti-modification exception of 11 U.S.C.A. § 1322(b)(2)." *Id*. at ¶ 4 (emphasis in original).

Whether real property is actually a debtor's principal residence, and thus falls within the § 1322(b)(2) anti-modification exception, has confounded bankruptcy courts. *In re Moore*, 441 B.R. 732, 739 (Bankr. N.D.N.Y. 2010) (noting that "[c]ourts have widely disagreed over the proper application of the anti-modification provision, yet each one proclaims that its rule best comports with the 'plain meaning,' the legislative history, congressional intent, and/or the fundamental principles of bankruptcy law").

### B.        Relevant Statutory Authority and Case Law

Section 101(13A)(A) of the Bankruptcy Code defines a "debtor's principal residence" as

"a residential structure *if used as the principal residence by the debtor*, including incidental

property, without regard to whether the structure is attached to real property."[1] 11 U.S.C. §

101(13A) (emphasis added).  Section 101(13A) was amended in December 2010 pursuant to

Bankruptcy Technical Corrections Act of 2010 ("BTCA").  *See* Pub.L. 111–327, 124 Stat. 3557

(Dec. 22, 2010).  The 2010 amendment added the phrase "if used as the principal residence by

the debtor," and was intended to clarify "that [this] definition pertains to a structure used by the

debtor as a principal residence." *See In re Picchi*, 448 B.R. 870, 872 (B.A.P. 1st Cir. 2011)

(citing 156 Cong. Rec. H7158 (daily ed. Sept. 28, 2010)).[2]  After this amendment, one court has

argued that "the definition of 'principal residence' in § 101(13A) unambiguously hinges on how

the debtor actually uses the structure, not the debtor's intentions at any point in time." *In re*

*Schayes*, 483 B.R. 209, 213 (Bankr. D. Ariz. 2012).

The focus on "use" has been the central crux of the "principal residence" issue for some

time.  As discussed below, courts differ over whether real property should be considered a

"debtor's principal residence" when the property also has a commercial use.

#### i.        *Macaluso* Approach

On one side of the spectrum is the opinion of the bankruptcy court in *In re Macaluso*, 254

B.R. 799 (Bankr. W.D.N.Y. 2000).  The *Macaluso* court held that the anti-modification

exception in § 1322(b)(2) applies to *any* property that is used as the debtor's principal residence,

---

[1]        Section 101(13A)(B) of the Bankruptcy Code also provides that a "debtor's principal residence" includes
an individual condominium or cooperative, a mobile or manufactured home, or trailer if used as the principal
residence by the debtor.  Neither party asserts that this section applies to the instant matter.

[2]        Although the amendment provided insight into Congress' view of what constituted a debtor's principal
residence, the legislative history indicates that the BTCA was "not intended to enact any substantive change to the
Bankruptcy Code." *See Picchi*, 448 B.R. at 872 (citing 156 Cong. Rec. H1758 (daily ed. Sept. 28, 2010) (statement
of Rep. Smith)).

notwithstanding the fact that the debtor's property in that case included a second residential unit

and a store. *Id.* at 800. The court focused on the language in § 1322(b)(2), finding that the

statute "excepts from modification any claim secured by a security interest in real property that is

the debtor's principal residence." *Id.* As the mortgage holder held a claim "on a single parcel of

real estate, it matters not that the parcel may fulfill many uses or be divided into many units." *Id.*

So long as the "debtor principally resides in the real estate or some part thereof," the anti-

modification exception is triggered and the mortgage securing such real estate cannot be

modified. *Id.*

This result has been criticized. As one bankruptcy court noted: "[t]he problem with the

*Macaluso* approach is that it could conceivably be applied to, for example, a large factory in

which a debtor maintains a small apartment as his or her principal residence. This result would

be the tail wagging the dog." *In re Zaldivar*, 441 B.R. 389, 390 (Bankr. S.D. Fla. 2011).

### ii.    *Scarborough* and *Lomas* Approach

Other courts have taken the exact opposite approach. The Third Circuit in *In re*

*Scarborough* held: "[w]here a creditor takes an interest in real property that is *not* the debtor's

principal residence, such as property that will be used as income-generating rental property, the

anti-modification provision [in § 1322(b)(2)] does not apply." 461 F.3d 406, 414 (3d Cir. 2006)

(emphasis in original); *see also In re Moore*, 441 B.R. 732, 739 (Bankr. N.D.N.Y. 2010)

(following the reasoning of *Scarborough* to hold that the mortgage holder's claim could be

modified because it took a security interest in a single parcel of real property that included

income-producing real property in addition to the debtor's principal residence).

Similarly, one of the first cases to deal with this issue, a First Circuit case from 1996,

held that "the antimodification provision of § 1322(b)(2) does not bar modification of a secured

claim on a multi-unit property in which one of the units is the debtor's principal residence and

the security interest extends to the other income-producing units." *Lomas Mortgage, Inc. v.*

*Louis*, 82 F.3d 1, 6 (1st Cir. 1996); *see also In re Picchi*, 448 B.R. 870, 875 (B.A.P. 1st Cir.

2011) (finding that *Lomas* was good law; the debtor could modify a mortgage holders claim

secured by a multi-unit building).

This approach has also been criticized. "The problem with th[e] approach [in

*Scarborough* and *Lomas*] is that it would permit security interests to be modified on a debtor's

principal residence when the debtor decides to rent out a garage apartment or convert a basement

into a rentable apartment." *In re Zaldivar*, 441 B.R. 389, 390 (Bankr. S.D. Fla. 2011).

### iii.    *Brunson* Approach

Other courts eschew bright-line rules in favor of a totality of the circumstances or case-

by-case approach. As stated in *In re Brunson*, "[e]ach case must turn on the intention of the

parties." 201 B.R. 351, 353 (Bankr. W.D.N.Y. 1996). To evaluate the parties' intentions, "[t]he

Court must focus on the predominant character of the transaction, and what the lender bargained

to be within the scope of its lien. If the transaction was predominantly viewed by the parties as a

loan transaction to provide the borrower with a residence, then the antimodification provision

will apply. If, on the other hand, the transaction was viewed by the parties as predominantly a

commercial loan transaction, then strip down will be available." *Id*. at 354.

Some courts believe that the case-by-case approach is "most consistent with

Congressional intent" in enacting § 1322(b)(2). The "entire point of the anti-modification

provision of § 1322(b)(2) is to 'encourage the flow of capital into the home lending market' by

reducing risk to mortgagees[.]" *Zaldivar*, 441 B.R. at 390-91 (citing *Nobelman v. Am. Sav. Bank*,

508 U.S. 324, 332 (1993). Taking congressional intent into mind, some courts believe "it makes

a good deal of sense to look at the substance of the bargain between the parties to determine

whether strip-down is prohibited by § 1322(b)(2)." *Zaldivar*, 441 B.R. at 390; *see also Litton*

*Loan Servicing, L.P. v. Beamon*, 298 B.R. 508, 512 (N.D.N.Y. 2003) (discussing how the

*Brunson* approach is most consistent with *Nobelman* and Congress' intent in including the

antimodification in § 1322(b)(2)).

The *Brunson* approach has also been sharply criticized.  The Third Circuit in

*Scarborough* noted "that the multi-factor test introduces uncertainty and unpredictability to

residential mortgage transactions because it requires courts to engage in subjective, hindsight

analysis as to the intent of the parties."  *Scarborough*, 461 B.R. at 414.  Furthermore, two Ninth

Circuit Bankruptcy Appellate Panel cases have held that the "the appropriate time for

determining whether property is a debtor's principal residence is the petition date." *In re Benafel*,

461 B.R. 581, 585 (B.A.P. 9th Cir. 2011); *In re Abdelgadir*, 455 B.R. 896, 898 (B.A.P. 9th Cir.

2011); *but see In re Proctor*, 494 B.R. 833, 840 (Bankr. E.D.N.C. 2013) (determining whether

property is a debtor's principal residence based on the mortgage documents, not the petition

date).  If the Ninth Circuit Bankruptcy Appellate Panel's view is correct, and the petition date is

the appropriate time to determine whether property is a "debtor's principal residence," a court

would be precluded from evaluating the parties' intent at the time they entered into the loan

transaction.

### C.      Debtor is Barred from Arguing that the Route 28A Property is Not His Principal Residence as the Debtor Already Opted to Participate in Loss Mitigation

Regardless of which test this Court applies, the Debtor already conceded that the property

is his "principal residence."  Pursuant to the Loss Mitigation Program Procedures, Section II,

Part B, a debtor may only seek loss mitigation on "any real property or cooperative apartment

used as a principal residence in which an eligible Debtor holds an interest." *See* Gen. Ord. M-451

(June 17, 2013) (adopting the Loss Mitigation Program Procedures).[3]  The model chapter 13

plan, in which the debtor opted for loss mitigation, also noted that loss mitigation "applies only

to the Debtor's residential real property or cooperative apartment."

Taking both of these admissions into consideration, the Court finds that the Debtor is

estopped from arguing that the Route 28A property *is not* his principal residence as the Debtor

admits that the Route 28A Property is a "residential structure [] used as the principal residence

by the debtor." 11 U.S.C. § 101(13A)(A); *see also Lamie v. U.S. Trustee*, 540 U.S. 526, 534

(2004) (discussing application of statute's plain language unless disposition is absurd).  Even if

the Debtor had not participated in loss mitigation, it would have been difficult for the Debtor to

meet his burden of convincing this Court that Ocwen's lien could be bifurcated.  *See In re*

*Moore*, 441 B.R. 732, 736 (Bankr. N.D.N.Y. 2010).

Focusing this Court's attention on the *Brunson* test, the Debtor argued that the Route 28A

Property is "zoned light factory/highway commercial and is improved by a small building in

which the debtor dwells and a full service wood-working factory." Mem. Law in Supp. of Mtn.,

ECF No. 31, pg. 6 (noting also that the "dwelling is unfinished and unsuitable for family

living."). Notwithstanding this assertion, the Debtor's appraisal indicates that the property is

zoned R/60, which is described as "RESIDENTIAL MIN LOT SIZE 60,000 SF."  The second

argument, that the property is improved by a small building, is equally unavailing.  The Debtor's

appraisal notes that the Route 28A property is a 6 room, 3 bedroom ranch, with a full basement

that was built in 1960.

The Debtor also argues that "[u]pon advice of the mortgagee, the debtor agreed to

execute a residential mortgage agreement," although the mortgagee was "aware of the

---

[3]      Loss Mitigation Procedures in effect prior to June 17, 2103 contained the exact same language with respect
to eligible property.

commercial nature of the property as at the time of application debtor's sole source of income was from his wood working business located thereon."  Mem. Law in Supp. of Mtn., ECF No. 31, pg. 7.  The parties' intent at the time they entered into the mortgage contract is relevant under *Brunson*, although the Debtor has put forth no documentary evidence to substantiate his assertions.   The Court is left to rely on the Debtor's 2006 residential mortgage contract, pursuant to which the Debtor agreed (in Covenant # 6) to occupy the property as his principal residence. If the mortgage contract had no owner-occupancy requirement, the Debtor would have a much stronger argument for strip down.  *See Zaldivar*, 441 B.R. at 391; *Brunson*, 201 B.R. at 354. Even if this Court were to adopt the *Brunson* test, it appears that this Debtor bargained for a residential mortgage on a piece of real property that he has resided in since the mid-1990s.

### Conclusion

The Debtor's motion to bifurcate Ocwen's lien is denied.  After participating in loss mitigation, and ultimately accepting a HAMP loan modification, the Debtor is estopped from arguing that the Route 28A property is *not* his principal residence.

The Debtor also seeks to avoid a junior mortgage lien held by KeyBank.  KeyBank did not file an objection to this motion.  The Court grants this portion of the motion, unopposed.


Dated: Poughkeepsie, New York
     September 25, 2013                    /s/ Cecelia G. Morris
                                            Chief United States Bankruptcy Judge